# Walker *versus* Walker.

Where a testator, in the introductory part of his will, declares his intention "to settle and adjust my worldly affairs, by making and ordaining this my last will and testament;" and, after devising to several of his sons various parts of his real estate in fee simple, introduces the following: "And I do hereby grant and devise to my son Enoch Walker, twenty acres of land adjoining and parallel with the twenty acres granted to my son Lewis';" and no intention manifested in any part of the will to give less, the devisee will take a fee simple.

The rule which in England requires the heir to be preferred in cases of doubt, is different in Pennsylvania, because "heir" has a different meaning: there it is the eldest son, here all the children.

Where a will devises the property among the heirs, the court will be less strict in requiring words of limitation to create a fee, than where it is given to a stranger.

ERROR to the Common Pleas of *Chester county*.

This was an action of ejectment by Joseph Walker and others, heirs at law of Joseph Walker, deceased, against William Walker,

[Walker *v.* Walker.]

to recover twenty acres of land in Chester county. The land in dispute was part of a larger tract, of which Joseph Walker died seised on the 2d day of November, 1818. The defendant claimed under a devise in the will of Joseph Walker, deceased, to his son Enoch Walker, and by regular conveyances from the devisee to himself.

The will of Joseph Walker was as follows :—

" I, Joseph Walker, of Tredyffrin township, in the county of Chester, and state of Pennsylvania (farmer), being in good health, though almost deprived of sight, but being of sound mind, memory, and understanding, think it necessary at my advanced age to settle and adjust my worldly affairs, by making and ordaining this my last will and testament, in manner and form following :—

" I order and direct all my just debts and funeral expenses to be paid by my executors, to be hereinafter appointed. I give and bequeath unto my son, Isaac Walker, during his natural life, the farm he now occupies, described as follows, beginning—(here follows a description of the premises), supposed to contain about one hundred and nine acres, be the same more or less, together with the privilege of the water to take and convey the same through my other land, in the same manner it is now used, three and a half days in every week for ever, with the privilege of taking and using in the same manner *watter* of Rohoboth spring, through the meadow hereinafter to my son Thomas, and with privilege to clean the watercourse when necessary. But it is my will and I do hereby direct my son Isaac to lay off and convey to proper persons, six perches in breadth along the east side, two along the south side of the graveyard lot, until it comes straight with the west end of the present burying ground, for the use and convenience of Friends belonging to that meeting, after the decease of my son Isaac Walker. I give and bequeath this described lot of land unto my grandson Joseph Walker, son of Isaac Walker, to him, his heirs and assigns, for ever, subject to the following legacies to be paid when the said tract of land comes into the said Joseph's possession. First, to my son Lewis Walker, two hundred pounds, to the surviving children of my daughter Naomi two hundred pounds, and to my granddaughters Anna James and Naomi Rhoads, twenty pounds each, and twenty pounds to my great-grandson Joseph Rowland, if he attain the age of twenty-one, but if he should die before that age, it is to be paid to the said Anna James and Naomi Rhoads equally. And one hundred pounds to the heirs of my son Joseph Walker, and with twenty pounds unto each of my grandchildren Walker, Sarah, and Eli Yarnall. I give and devise unto my son Thomas Walker, and to his heirs and assigns, subject to the following legacies, all my mansion-house and farm of one hundred acres or thereabouts, conveyed to me by my father, and the mill, and I also give, devise, and confirm to him, my said

[Walker *v.* Walker.]

son Thomas, and to his heirs and assigns for ever, the ten acres of land bounded on the east corner of the above described tract devised to my son Isaac and grandson Joseph, and on the county line and Reese Howell's land, and I also give, devise, and confirm to him, my said son Thomas, and to his heirs and assigns for ever, all that tract of ninety acres of land or thereabouts, lying between the tract before devised to my son Isaac and grandson Joseph, and the tract hereafter devised to my three sons, Jesse, Lewis, and Enoch, being part of the tract originally of three hundred and sixty-eight acres of David Powell's land, for which last-mentioned two tracts, that is to say, of ten acres and of ninety acres I have given to my said son Thomas, assurances of conveyance to him in fee simple by will or by deed, and I give unto my son Thomas, his heirs and assigns, nine acres off the west end of the hill land, which I bought of Isaac Potts, and I do hereby charge the mansion-house, farm, and mill given to my son Thomas, with the payment of seven hundred and fifty pounds to my son Enoch Walker, and with the sum of five hundred and fifty pounds to my son Lewis Walker, and with the payment of one hundred pounds to my daughter Naomi Thomas' children, and with seven hundred and fifty pounds to my son Jesse Walker, and with one hundred and eighty-seven pounds ten shillings to my grandson William Walker, son of Jesse Walker, and finally with the payment of all my debts and dues and demands justly owing by me, if my personal estate, which I pledge for the same, should not prove sufficient to satisfy the same. I give and devise to my son Jesse Walker, his heirs and assigns, twenty acres of land, beginning at the corner of the mansion-house farm granted to Thomas Walker, reserving to said Thomas the privilege of the tail race continuing through the land, thence along Beaver's line down to the line of the ninety acres tract granted to Thomas, thence along his line so far that on running a line back parallel with Beaver, it will contain twenty acres. And I do hereby grant to my son Jesse, eight acres of the hill land adjoining the nine acres granted to my son Thomas, which I bought of Isaac Potts. And I do hereby grant and devise to my son Lewis Walker, twenty acres of land adjoining and running parallel with the twenty acres granted to my son Jesse, with eight acres of the hill land adjoining on my son Jesse's part, to him, his heirs, and assigns. And I do hereby grant and devise to my son Enoch Walker, twenty acres of land adjoining and parallel with the twenty acres granted to my son Lewis, which will extend to the Swede's ford, be the same more or less, and I grant unto my son Enoch the remaining part of the hill land bought of Isaac Potts, it being eight acres more or less; the above three grants of twenty acres are to include all the land laying between the ninety acre tract granted to Thomas Walker and the mansion-house tract, be the same more or less. Thomas to have the privilege of continuing the tail race through the tract granted

to my son Jesse.　I also give and devise to my son Jesse Walker, for and during his natural life, the dwelling-house, barn and mill or mills, at Laxawaxen falls in Pike county (formerly Wayne), with the ten acres part of the tract originally granted to William Halbert and Thomas Griffith tract, which lays on both sides of the Laxawaxen creek near or *contidious* to the lower mills, and also that adjoining tract in said county, being No. 2, in the Marshall deed to Thomas Cadwalader, Esq., originally granted to Mordecai Roberts, for four hundred and thirty-nine acres and eighty perches, thence from the upper corner of said tract to the north-west corner of the tract granted to George Morton along the line of said tract to the north-east corner, thence along the east end of said tract and that line continued until it strikes the Griffith tract, at his decease, to his wife Catharine Walker, if she be living, for and during the term of her natural life, provided she continues his *widdow;* but in case she should marry, my executors are to pay her two hundred pounds in lieu thereof, which they are to collect from the said property, and I give and devise the same and every part thereof to their son William Walker, his heirs and assigns, and as far and *conserning* all the residue and remainder of my estate at Laxawaxen in the county aforesaid, conveyed to me by Thomas Cadwalader and Mary his wife, I order and direct my executors or their survivors, or their executors or executors of each survivor, to demise the same at such rent for such term or terms as they may think most beneficial, or dispose of the same in fee simple if it should be by them deemed advisable, and which I hereby authorize them to do, and after deducting all proper charges to divide the rents or amount of sales as may be in eight equal parts, one part whereof I give to my son Isaac, one part to my son Thomas, one part to my son Lewis, one part to the heirs of my son Joseph, one part to my son Enoch, one part to my daughter Naomi Thomas' children, one part to my daughter Zilla's children, and one part to my daughter Priscilla's children, equally; the children of such as may die previously, taking the share of their respective parents equally.　I release my son Joseph from all debts due me, and I also release my son Enoch from all debts due me, and it is my express will and intention that the devises and bequests hereinbefore given to my respective sons and daughters, as well as any grants by me given, shall be taken and received upon this consideration only that they do respectively release and exonerate my estate of and from all debts due and demands, of every sort whatever, for labouring service or otherwise, by them or any of them claimed of me, or to be claimed of my executors; and I do hereby appoint Isaac Thomas and Enoch Walker, my sons, executors, of this my last will, hereby revoking all former wills by me made, and declaring this to be my last will and testament.　In witness whereof I, the said Joseph Walker the testator, have here-

unto set my hand and seal, this thirteenth day of twelfth month, 1817.

                                        JOSEPH WALKER. [SEAL.]

Signed and sealed in the presence of us,
        THOS. J. WALKER,
        WM. WEBB.''

The plaintiffs contended, that the devise to Enoch Walker of the premises in dispute, was but of a life estate, and showed that he died in March, 1854, before the bringing of this suit. The facts were agreed upon by the parties in the nature of a special verdict.

The court below (HAINES, P. J.) entered judgment for the defendant.

The plaintiffs removed the cause to this court, and assigned here for error, that the court below erred in entering judgment for the defendant.

*J. J. Lewis,* for plaintiff in error.—The nature of the devise in question is to be determined by the law as it stood at the death of the testator, nearly forty years ago.

There existed, at that time, certain established rules for the construction of such devises.

One was, that where real property was devised without limitation, the devisee took but an estate for life, unless from other parts of the will an intention to give a greater estate was plainly to be inferred.

Another was that the heir at law was not to be disinherited without express words or necessary implication: Throgmorton *v.* Wright, 3 *Wil.* 418; Bowes *v.* Blackett, *Cowp.* 235.

By the Act of 28th January, 1777, the common law and such of the statutes of England as had been in force should be binding on the inhabitants of this state, and a multitude of decisions had settled the construction to be given to words such as are used in the devise in question: Mudge *v.* Blight, *Cowp.* 355: and Lord MANSFIELD'S opinion in that case was received as authoritative in Pennsylvania in cases of French *v.* McIlhenny, 2 *Binn.* 30, and Clayton *v.* Clayton, 3 *Binn.* 436.

No decision has gone the length of making the introductory words '' As touching my worldly estate,'' &c., sufficient of themselves to manifest an intention to give in fee simple when the devise is not coupled with words of express limitation: Busby *v.* Busby, 1 *Dall.* 266, in which Throgmorton *v.* Wright, 3 *Wil.* 414, was referred to, relied on, and adopted without qualification. He argued that the established rule was that the introductory clause would not have the effect of enlarging the subsequent devises to a fee without apt words used for that purpose: Denn *v.* Gaskin, *Cowp.* 657;

[Walker v. Walker.]

Goodright v. Baker, 5 *T. R.* 13; Doe v. Allen, 8 *T. R.* 503; Doe v. Buckner, 6 *T. R.* 610; Goodright v. Barrow, 11 *East* 220; Moor v. Denn, 2 *Bos. & P.* 247; 2 *Pow. on Dev.* 416; *Ram. on Wills* 65, 6.

There is nothing in any case in Pennsylvania decided prior to 1852, which countenances the idea that such introductory words alone can make any difference in the quantity of the estate devised: Busby v. Busby, 1 *Dall.* 266; Caldwell v. Ferguson, 2 *Yeates* 250; Dougherty v. Brown, 2 *Id.* 179; French v. M'Ilhenny, 2 *Binn.* 30; Cassell v. Cook, 8 *S. & R.* 288; Campbell v. Carson, 12 *S. & R.* 54; Steele v. Thompson, 14 *S. & R.* 84; Weidman v. Marsh, 4 *Harris* 512.

Presented in its true light, the question is, do the words of this devise, unaided as they are by any others in the will, pass an estate in fee or for life, as the law stood in 1818.

*Darlington* and *Pennypacker*, for defendant in error.—Did Enoch Walker take a fee in the land devised? The defendant maintains that he did. If it be clear that the testator intended to dispose of his *whole* estate, the devise will be construed to pass a fee, although there are no words of limitation annexed. Whatever prejudice exists in England in favour of the heir over the devisee, there is no reason for the existence of any such feeling here. The intention of the testator is the polar star to guide the construction. This is to be gathered from the whole will. Various forms of expressions in the introductory clauses of wills have been deemed sufficient to indicate an intention to give a fee: Campbell v. Carson, 12 *S. & R.* 56. The meaning of the words to "*settle and adjust his worldly affairs,*" is clearly that he intended to dispose of his estate by will, and the intention to do so is clearly deducible from the face of the will.

This intention there manifested will be carried down and give effect to the devising clause. It would be affectation of learning to cite the various authorities on this subject, which has been so fully reviewed by Justice LOWRIE in Schriver v. Meyer, 7 *Harris* 89.

That case was followed by Woods v. Hill, 7 *Id.* 573, to the same effect, and both are recognised in Shinn v. Holmes, 1 *Casey* 142. Now what reason exists for discarding the rule in this case? In each case where the testator in this will expressly gives a life estate, there is a devise over. In the clause in question there is none; and this has been regarded as an important and significant fact: Miller v. Lynn, 7 *Barr* 443; Shinn v. Holmes, 1 *Casey* 144. In this case we have the clear intent to dispose of the whole estate, without any devise over, and no indication of any intention to give Enoch less than a fee in the twenty acres.

In the same clause the testator devises to Enoch eight acres of

[Walker *v.* Walker.]

*hill land* without any words of perpetuity.    This would be wholly useless if he had but a life estate in it; as he could reap no profits from, or commit any waste upon it: Caldwell *v.* Ferguson, 2 *Yeates* 380.   He could not intend a barren gift of the unimproved land; and the twenty acres being in the same clause, there is no reason to believe any difference was intended.

It is the remaining part of the hill land *bought* of Isaac Potts, that he devises to Enoch.   "My late purchase" will pass a fee: Neide *v.* Neide, 4 *R.* 75.

This will is to be construed by the light of the present day, rather than the exploded notions favouring the heir prevalent in other times.   By the Act of 1833, this is now the settled policy of our state, and the Supreme Court, in McClure *v.* Dowthit, 3 *Barr* 406, say this should have been the construction before: Wood *v.* Hills, 7 *Harris* 575.

The opinion of the court was delivered by

LOWRIE, J.—We think the learned President of the Common Pleas decided this cause rightly, and we have very little to add to the reasons assigned by him.

Let us keep in hand the rule that requires us to prefer the heir at law, in case of doubt; and therefore not to treat a devise as creating a fee, unless it clearly appears to be so intended.

But this rule is different here from what it is in England, because heir has a different meaning: there it is the eldest son; here all the children.   Here a will is usually the distribution of an inheritance among the heirs; there it is giving it away from the heir.   When the latter is its character, we may be strict in requiring words of inheritance; when the former is, we cannot, to say the least, be so strict, for we are preferring the heir when we favour the devise.   If we should read the devise to one child without words of inheritance, and all the rest with them, we should cut off one heir from his inheritance; unless we could repair the wrong afterwards when we come to divide the reversion, which would be better done at first.

There is abundant evidence in the will that the testator intended to dispose of all his property and thought he had done so, and no evidence of a contrary intention.   Debts usually fall upon a residue; but here they are specially charged upon Thomas's share. The lot in dispute is part of a tract which he divided into twenty-acre lots and devised among his sons, using words of inheritance in the other instances and not in this; while other words show that he supposed himself to be fully disposing of · the whole tract.

Another tract was divided into eight and nine acre lots, and disposed of in the same way, and evidently with the same intention; but here no words of inheritance are used in the gift of Jesse's lot; and yet, when he afterwards substitutes Thomas for

[Walker *v.* Walker.]

Jesse in this respect, it becomes apparent that he supposed that he had given Jesse a fee, and he gives it to Thomas, though still without words of inheritance. In two cases only did he intend to create life estates in land, and then he expressly says so.

In the instance in dispute the whole frame of the will demands the implication of an inheritance, and that is all we have in the crowd of cases, when the word heirs is omitted in fact, but in volved in the clear intention.

And if we were to follow the principle that prevails in advancements and in marshalling the assets of decedents, insolvents, and bankrupts; and which requires those who have obtained a prefer ence to stand aside from the residue until others, who are equal to them before the law, shall be made equal in fact: if we were to follow this principle, it would most likely cure this alleged omission without profiting the plaintiffs. We do not say that this course could be taken, but the principle is quite unfriendly to the plaintiff's claim.

Judgment affirmed.